Appeal by the defendant, by permission, from an order of the Supreme Court, Queens County (Lasak, J.), dated September 26, 2012, which denied, without a hearing, his motion pursuant to CPL 440.10 to vacate a judgment of conviction of the same court rendered April 26, 2006, convicting him of attempted murder in the second degree, assault in the first degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.
Ordered that the order is affirmed.
The defendant was convicted, after a jury trial, of attempted murder in the second degree, assault in the first degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. The conviction was affirmed on appeal (see People v Negron, 41 AD3d 865 [2007]). The case involved an incident in which the defendant was identified as the person who shot Mervin Fevrier in the thigh after a brief verbal altercation. Three eyewitnesses also identified the de *742 fendant’s car as belonging to the shooter, and testified, together with another eyewitness, that the shooter entered the apartment building where the defendant resides.
At trial, one of the eyewitnesses who had been with Fevrier at the time of the shooting testified that the shooter had a beard and mustache, and another witness picked out a filler who had a mustache from a lineup that included the defendant. The defendant testified that he was clean shaven both before and during the time of the shooting. The prosecutor introduced the defendant’s driver license photo from 2004 showing him with facial hair.
Before trial, the People disclosed that another man, Fernando Caban, who lived in the same building as the defendant, had been arrested for possession of a cache of weapons and other contraband. Defense counsel moved to introduce evidence that Caban was the shooter on the basis that Caban looked like the defendant, lived in the same apartment building as the defendant, and had been arrested after the shooting for possession of a cache of weapons and other contraband. The trial court denied the defendant’s motion.
The defendant appeals from an order denying his motion to vacate the judgment of conviction pursuant to CPL 440.10. The defendant contends that the judgment of conviction should be vacated on the grounds that he received ineffective assistance of counsel at trial, that the People committed Brady violations (see Brady v Maryland, 373 US 83 [1963]), and that he is actually innocent of the crimes of which he was convicted.
The defendant contends that he received ineffective assistance of counsel at his trial under both the United States Constitution and the New York Constitution. Under the New York State standard for ineffectiveness of counsel, “[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met” (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Henry, 95 NY2d 563, 565 [2000]). Whether trial counsel should be considered ineffective depends upon the fairness of the process as a whole (see People v Benevento, 91 NY2d 708, 714 [1998]). In New York, a defendant need not prove that the outcome of the case would have been different but for counsel’s errors, rather, only that he was deprived of a fair trial overall (see People v Caban, 5 NY3d 143, 155-156 [2005]).
In addition to demonstrating that counsel’s performance fell below an objective standard of reasonableness, a claim of inef *743 fective assistance of counsel under the Sixth Amendment to the United States Constitution requires the defendant to establish that he was prejudiced by such deficient performance (see Strickland v Washington, 466 US 668, 687 [1984]). Prejudice is established when “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different” (id. at 694).
The defendant failed to establish that he received ineffective assistance of counsel under either federal or state constitutional standards. The defendant contends that his trial counsel was ineffective, among other things, for failing to object to the trial court’s denial of his motion to admit evidence supporting a third-party culpability defense. In determining whether to admit such evidence, the court must weigh the probative nature of the evidence against the potential for delay, prejudice, or confusion (see People v Primo, 96 NY2d 351 [2001]). Here, the evidence was of slight, remote, or conjectural significance, and was not sufficiently probative to outweigh the countervailing risks of trial delay, undue prejudice, confusing the issues, or misleading the jury (see id. at 355). Thus, the Supreme Court properly denied the defendant’s motion to admit evidence supporting third-party culpability, and defense counsel cannot be considered to have rendered ineffective assistance of counsel by failing to object to the denial of that motion.
The defendant’s further contentions that defense counsel was ineffective for failing to introduce the defendant’s mugshot or lineup photo during trial, failing to investigate and present 11 additional witnesses who would have testified that the defendant did not have facial hair at the time of the shooting, failing to question the two defense witnesses as to whether the defendant had facial hair at the time of the shooting, and failing to point out that an eyewitness picked out a filler from the lineup who had a mustache, thereby supporting another eyewitness’s description of the perpetrator as having facial hair, are also without merit. The defendant failed to establish that there is a reasonable probability that the introduction of this evidence would have affected the outcome of the trial (see Padilla v Kentucky, 559 US 356 [2010], citing Strickland v Washington, 466 US 668 [1984]). Furthermore, the record establishes that defense counsel provided meaningful representation as a whole (see generally People v Berroa, 99 NY2d 134, 138 [2002]; People v Benevento, 91 NY2d at 712; People v Satterfield, 66 NY2d 796, 799 [1985]).
The defendant contends that the People committed Brady violations by: (1) failing to disclose that Caban’s cache of *744 weapons included .45-caliber ammunition, the same caliber of ammunition used in the shooting; (2) failing to disclose, inter alia, that Caban fled with his cache of weapons when the police arrived to search the defendant’s apartment, and escaped after discarding bags of weaponry and other contraband on the roof of his apartment building; and (3) failing to disclose the existence or identities of police and civilian witnesses who could have testified as to Caban’s “guilty behavior.”
As an initial matter, the Supreme Court noted that the Rosario materials (see People v Rosario, 9 NY2d 286 [1961], cert denied 368 US 866 [1961]) turned over by the People indicated that Caban’s cache of weapons included, inter alia, .45-caliber ammunition. In any event, the defendant’s contention that the People committed Brady violations is without merit. “To establish a Brady violation, ‘[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued’ ” (People v Alonso, 91 AD3d 663, 664 [2012], quoting Strickler v Greene, 527 US 263, 281-282 [1999]). Here, the undisclosed material was not exculpatory, since there was no ballistics evidence conclusively linking the shell casings recovered from the crime scene to the .45-caliber ammunition found in Caban’s cache, or to any weapons found in the cache. Caban’s flight and attempt to discard weapons and other contraband on the roof of his building upon the arrival of the police showed only consciousness of guilt as to the possession of illegal guns and other contraband (see generally People v Pacheco, 38 AD3d 686 [2007]; People v Pannell, 3 AD3d 541 [2004]). Moreover, there was no showing of prejudice, because there is no reasonable probability that the failure to disclose the materials contributed to the verdict (see People v Alonso, 91 AD3d at 664). Accordingly, the Supreme Court properly determined that the People did not commit any Brady violations.
The defendant’s remaining contention is without merit. Dillon, J.R, Angiolillo, Roman and Sgroi, JJ., concur.