■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESUS M. TORRES, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Suffolk County (McInerney, J.), rendered January 8, 1986, convicting him of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. The facts have been considered and determined to have been established.

The defendant's conviction was based upon his purported sale of cocaine to undercover Detective Paul Marquardt.

At trial, the defendant claimed that he was "entrapped" into making the sale by a police informant, Christos Xanthoudakis, also known as Chris Dakis. He specifically testified that his first contact with Xanthoudakis was in April 1985 while Xanthoudakis, whose recall of specific dates was poor, claimed he had first contacted the defendant in May or June of 1985. The defendant further testified that between April and July, Xanthoudakis had regularly asked him to sell drugs, which invitations the defendant declined. Although the defendant admitted that he had purchased cocaine for his own use, he denied ever having the inclination to sell. It was his contention that his ultimate decision to assist Xanthoudakis in obtaining cocaine was the result of Xanthoudakis's active inducement commencing in April. According to Xanthoudakis, he never importuned the defendant to sell cocaine, but it was the defendant who sought to sell him cocaine.

It is undisputed that at the time Xanthoudakis first met the defendant in 1985, Xanthoudakis was already an informant for the Drug Enforcement Administration (hereinafter DEA). Shortly after Xanthoudakis became an informant, he was introduced to Detective Marquardt, who was assigned to the DEA as part of a drug task force. Further, Marquardt ac-

knowledged that he knew of Xanthoudakis's efforts to contact known narcotic dealers on Long Island. However, Marquardt claimed that it was not until mid-July of 1985 that Xanthoudakis specifically mentioned the defendant to him. At that time, Xanthoudakis told Marquardt that the defendant wanted to sell a kilo of cocaine. Marquardt then began working directly with Xanthoudakis on the drug deal which ultimately resulted in the defendant's arrest.

The court charged the jury, in pertinent part, as follows:

"One. As a first element. The defendant must establish that he committed the crime, either sale or possession in this case, because he was actively induced and encouraged to do so by a public servant or by a person cooperating with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution.

"Now, the public servant in this case apparently was Officer Marquardt. And when and if Xanthoudakis became his informer, the acts of Xanthoudakis at that time became the acts of Marquardt because, in effect, he is the police agent then. What happened prior to that is not the responsibility of Marquardt. This defense is against the police not private individuals."

Initially, we find that the defendant did not prove, as a matter of law, the affirmative defense of entrapment (see, Penal Law § 40.05), thereby entitling him to a dismissal of the indictment.

Nevertheless, we agree with the defendant's contention that the trial court should have charged the jury, as the defendant had requested, that Xanthoudakis was a police agent from the moment he had become an informant for the DEA. By failing to so charge, the trial court removed from the jury's consideration evidence of Xanthoudakis's purported actions prior to the time Marquardt allegedly learned of the defendant's existence. Once Xanthoudakis became an informant, he was actively involved with investigations designed to apprehend narcotics dealers. When the police make use of such an informant they cannot disown him and insist they are not responsible for his actions (see, Sherman v United States, 356 US 369, 373). Even if the police do not become involved in a particular investigation until the informant has had substantial contact with a suspect, they cannot claim "disassociation through ignorance" (see, Sherman v United States, supra, at 375) on the ground that they were unaware that the infor-

mant was allegedly actively seeking to induce the suspect to commit the crime. We therefore hold that Xanthoudakis was a "person acting in cooperation with a public servant" *(see,* Penal Law § 40.05), from the moment he became an informant and the jury should have been so charged. Since the charge as given improperly limited the jury's consideration of relevant evidence of Xanthoudakis's alleged conduct, a new trial is warranted.

In light of our determination, we find it appropriate to discuss one further contention raised by the defendant. The trial court admitted into evidence the tape of a July 24, 1985 telephone conversation between Detective Marquardt and the defendant. Detective Marquardt testified that he was the person who made the recording and that immediately afterwards he removed certain tabs from the cassette to prevent the tape from being altered. He also marked the cassette to indicate that this was the cassette on which he recorded the conversation. He further testified that the tape accurately represented the conversation, but during the recording a gap of 2½ minutes occurred because the suction cup which attached the phone to the recorder became disconnected and he failed to notice it. Contrary to defendant's claim, the prosecutor did lay a proper foundation for the admission of the tape *(see, People v Ely,* 68 NY2d 520; *People v McGee,* 49 NY2d 48, 60, *cert denied sub nom. Waters v New York,* 446 US 942). The fact that there was a gap in the tape goes to the weight of the evidence, not its admissibility *(see, People v McGee, supra,* at 60). Mollen, P. J., Lawrence, Kunzeman and Harwood, JJ., concur.